UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                                    )
INTERNATIONAL BROTHERHOOD OF    )
TEAMSTERS, AIRLINE DIVISION, *et al.*, )   No. C17-0121RSL
                                                    )
                    Plaintiffs,           )
                                                    )   ORDER DENYING MOTION FOR
          v.                                  )   PRELIMINARY INJUNCTIVE
                                                    )   RELIEF
HORIZON AIR INDUSTRIES, INC.,     )
                                                    )
                    Defendant.          )
_____)

This matter comes before the Court on "Plaintiffs' Motion for a Preliminary Injunction." Dkt. # 12. The International Brotherhood of Teamsters, Airline Division and the Airline Professionals Association Teamsters Local Union No. 1224 (together, the "Union") seek an order enjoining Horizon Air Industries, Inc., from continuing a signing bonus and tuition reimbursement program for newly hired pilots. The Union argues that the program violates the Railway Labor Act ("RLA") in three ways: implementation of the program upends the status quo prior to the exhaustion of mandatory bargaining procedures, Horizon's bargaining stance did not reflect a "reasonable effort" to make and maintain labor agreements, and the employer's negotiation with individual pilots interferes with the pilots' right to bargain collectively through their chosen representative. The Union seeks an injunction of the new hire bonus program until the RLA's mandatory bargaining and mediation processes are complete. Horizon, on the other

ORDER DENYING MOTION FOR
PRELIMINARY INJUNCTIVE RELIEF

hand, argues that neither the RLA nor the collective bargaining agreement ("CBA") applies to pilots who have not yet begun training with Horizon. Even if one could argue that payment of a signing bonus or tuition reimbursement prior to the start of training is precluded by the CBA, Horizon argues that the issue is debatable and the dispute must be determined in binding arbitration, not in federal court.

The Court, having reviewed the memoranda, declarations, and exhibits submitted by the parties and having heard the testimony of witnesses offered at the evidentiary hearing held on March 16, 2017, finds as follows:

On May 19, 2016, Horizon sent the Union a letter requesting that the parties:

> engage in a discussion to adjust Horizon's entry level first officer pay. As you are aware, our regional competitors are aggressively recruiting prospective pilots through increased pay rates and significant sign on bonuses. While our leadership team has ideas on addressing the current market inequity, we believe that the most effective solution will result from a collaboration with the [Union]. This matter is urgent, and we ask to meet immediately to discuss.

Dkt. # 13 at 108. The parties engaged in negotiations regarding a plan aimed at sweetening the deal for new pilots while ensuring that existing pilots were adequately remunerated. In Horizon's view, some of the options it preferred, such as increasing pay rates and/or paying bonuses to existing pilots, required it to reach agreement with the Union. Other options, such as paying pre-employment bonuses to new pilots, could be implemented unilaterally. Dkt. # 26 at ¶ 30. In the Union's view, any program to pay bonuses or provide benefits to any pilot, whether a recruit or an incumbent, would have to be negotiated with and ratified by the pilots. Dkt. # 15 at ¶ 10. Horizon and the Union reached an agreement on pilot pay in July 2016, but the pilots rejected the proposal. Dkt. # 15 at ¶¶ 22-23. Horizon subsequently implemented a pre-training bonus and tuition reimbursement program for pilot candidates without agreement of the Union. The payments are made after a pilot has accepted an offer of employment but before he or she begins ground school training.

For purposes of this dispute, the relationship between the Union and Horizon is governed by a CBA that went into effect on December 14, 2012. Dkt. # 26 at ¶ 7. Section 5.I.4. of the CBA provides that "New hire Pilots shall be paid a salary only . . . ." Dkt. # 13 at 44. "Pilot" is defined as an "employee on the Horizon Pilot Seniority List and who is a Captain or a First Officer. A Captain is the pilot in command of an aircraft and a First Officer is a second in command of an aircraft." Dkt. # 13 at 22. Pilots begin to accrue seniority under the CBA "on the first Calendar Day a Pilot reports for initial ground school training." Dkt. # 13 at 47. "Employee" is not defined in the CBA, but the RLA uses the term to describe "every person in the service of a carrier (subject to its continuing authority to supervise and direct the manner of rendition of his service) who performs any work defined as that of an employee or subordinate official in the orders of the Surface Transportation Board . . . ." 45 U.S.C. § 151 (Fifth). The CBA contains a management rights provision stating "[u]nless expressly abridged by a specific provision of this Agreement," Horizon maintains the sole and exclusive right to, among other things, manage the company, direct and control the work force, determine the qualifications and standards of performance for specific positions, and determine whether any individual meets those standards. Dkt. # 26-1 at 2.

**A. STATUS QUO REQUIREMENT**

In order to obtain preliminary injunctive relief under the status quo provisions of the RLA, the Union must show that the parties' dispute is "major" rather than "minor" as those terms are defined in Consolidated Rail Corp. v. RLEA, 491 U.S. 299, 303 (1989) ("Conrail"). Whereas "major" disputes "arise where there is no [collective] agreement or where it is sought to change the terms of one," a "minor" dispute "relates either to the meaning or proper application of a particular [existing contract] provision." Conrail, 491 U.S. at 302-03 (quoting Elgin, Joliet

1  & E. Ry. Co. v. Burley, 325 U.S. 711, 723 (1945)).[1] Based on the above facts and the reasons

2  discussed below, the Court finds that the dispute – whether Section 5.I.4. of the CBA precludes

3  Horizon from providing non-salary bonuses or benefits to pilot recruits prior to the time they

4  begin their training – is "minor" and does not trigger the status quo provisions.

5    There is a presumption that disputes between a railroad and its unionized employees arise

6  under the governing contract and are therefore minor. "Where an employer asserts a contractual

7  right to take the contested action, the ensuing dispute is minor if the action is arguably justified

8  by the terms of the parties' collective-bargaining agreement." Conrail, 491 U.S. at 307. In this

9  case, Horizon argues that the new hires are not "Pilots" as that term is defined in Section 2 of the

10 CBA and, therefore, the salary-only provision of Section 5.I.4. is inapplicable. This argument is

11 not "frivolous" or "obviously insubstantial." A "Pilot" is defined as (i) an employee (ii) who is

12 listed on Horizon's seniority list and (iii) is either in command of aircraft or is the second in

13 command of an aircraft. Whether a pilot who has not yet begun her first day of training has

---

[1] The "major" versus "minor" distinction is the result of how Congress chose to address different problems affecting interstate commerce. The RLA was originally enacted in 1926 to secure the peaceful settlement of employer-employee disputes in the railway industry, a relationship which had previously been characterized by strikes, lockouts, and other disruptive (and sometimes destructive) forms of self-help. Congress provided ground rules for the selection of bargaining representatives and the negotiation of collective agreements, imposing lengthy time frames for each step and creating a "virtually endless" process intended to avoid interruptions in interstate commerce by delaying resort to self-help. Aircraft Serv. Int'l, Inc. v. Int'l Bhd. of Teamsters, 779 F.3d 1069, 1073 (9th Cir. 2015). "The federal courts were by necessary implication thus authorized to issue injunctions maintaining the status quo pending the exhaustion of these procedures." O'Donnell, 551 F.2d at 1146 (citing 45 U.S.C. §§ 152, 155, and 156).

In 1934, Congress addressed other causes of employer-employee strife in the railroad industry, particularly disputes regarding the interpretation and enforcement of existing agreements. Although courts have experience in this area, Congress opted to encourage arbitration and established a National Railroad Adjustment Board ("NRAB") in order to maximize expertise and the expeditious processing of such disputes. O'Donnell, 551 F.2d at 1146. Disputes of this character are "minor" and – in part because they are to be quickly resolved in the chosen statutory forum – courts generally lack jurisdiction to address the merits or enter an injunction. S. Ry. Co., 337 F.2d at 133 (noting that the exclusive jurisdiction of the NRAB over minor disputes is well settled).

ORDER DENYING MOTION FOR
PRELIMINARY INJUNCTIVE RELIEF            -4-

performed work for the employer, is on the seniority list,[2] or is qualified to assume the role of Captain or First Officer are fairly debatable issues. In combination with the management rights provision of the CBA, Horizon asserts a contractual right to provide bonuses to new recruits. Because "the dispute may be conclusively resolved by interpreting the existing [CBA]," it is considered "minor." Conrail, 491 U.S. at 305-07. Thus, Horizon may "make the change and the courts must defer to the arbitral jurisdiction of the Board." Conrail, 491 U.S. at 310.[3]

The Union argues that Horizon's May 19, 2016, request for negotiations precludes unilateral changes that touch on any topic that was raised in those negotiations. Dkt. # 13 at 108; Dkt. # 29 at 10. To the extent the Union is arguing that the May 19, 2016, letter is an admission that bonuses and tuition reimbursement paid before ground school training begins are mandatory subjects of bargaining, neither the language of the letter nor Horizon's conduct support that conclusion. The letter invites discussion regarding adjustment of "Horizon's entry level first officer pay." The parties did, in fact, negotiate regarding bonuses and pay increases for First Officers, which all parties agree is a "major" dispute requiring negotiation and mediation. In Horizon's view, however, it was not required to negotiate regarding payments to pilots who were

---

[2] Pursuant to Section 11.A. of the CBA, seniority begins to accrue on the day the pilot reports for training, but the procedure for and timing of adding pilots to the Pilot System Seniority List ("PSSL") is unclear. Dkt. # 13 at 47. Section 11.B. sets forth the order in which pilots are placed on the PSSL, but does not explain when or how often the lists are updated. Dkt. # 13 at 47-48. There is no indication in the CBA or the remainder of the record that pilots are added to the PSSL – *i.e.*, are "on the Horizon Pilot Seniority List" – before they commence training.

[3] The Union, citing a number of provisions of the CBA including at least one that suggests that newly-hired pilots are "First Officers" (see Section 5.A.2.c.), argues that Section 5.I.4. applies to pilots who have accepted an offer of employment, even if they have not yet begun ground school training. While the Union may ultimately be able to convince the arbitrator of the correctness of its interpretation of "Pilots" as used in Section 5.I.4., Horizon's interpretation of the relevant contractual provisions is not frivolous. Because the dispute is "minor," the Court lacks subject matter jurisdiction. See, e.g., ABX Air, Inc. v. Int' Bhd of Teamsters, Airline Division, __ F. Supp.3d __, 2016 WL 6581840, at *3-6 (S.D. Ohio Nov. 7, 2016).

ORDER DENYING MOTION FOR
PRELIMINARY INJUNCTIVE RELIEF          -5-

not yet "employees" under the RLA or "Pilots" under the CBA. Its conduct (including warning the Union that it would unilaterally implement a pre-hire recruiting program if the parties could not come to an agreement) were consistent with this dichotomy of mandatory and permissive subjects. An employer's willingness to negotiate regarding a permissive subject does not preclude it from making a unilateral change if an agreement cannot be reached.

Even if Horizon had issued a notice under 45 U.S.C. § 156 (hereinafter, "Section 6") regarding pre-hire compensation or bonuses, the Union does not explain why the notice would upend the analysis set forth in Conrail and the statutory distinctions between "major" and "minor" disputes. There is no indication in the case law that a party's initial characterization of a dispute would be binding on the courts. In fact, the opposite seems to be true. See Conrail, 491 U.S. at 306. In determining whether a dispute is "major" or "minor," the Court would undoubtedly take into consideration a railway's apparent concession – even if temporary – that its acts were not authorized under an existing agreement, but the determination would ultimately be made on the actual facts, not on the erroneous or tactical move of a party.

The Union also argues that new pilot recruitment and compensation schemes are so intertwined with the First Officer pay scale that an injunction maintaining the status quo is warranted under O'Donnell v. Wien Air Alaska, Inc., 551 F.2d 1141 (9th Cir. 1977), and Ill. Cent. R.R. Co. v. Bhd. of Locomotive Eng'rs, 422 F.2d 593 (7th Cir. 1970). In O'Donnell, the parties had a long-running dispute regarding whether two or three pilots should be assigned to each flight of a Boeing 737. While that issue was pending before the National Mediation Board, the airline began using a contractual probationary provision to fire third-pilot probationers, apparently in the hopes of affecting the outcome of contract negotiations, and then rehire them for service on other types of aircraft. 551 F.2d at 1143. The union filed suit in federal court seeking to enjoin the fire-hire policy until the three-pilot controversy was resolved. 551 F.2d at 1144. The Ninth Circuit, noting that the fire-hire dispute was probably a minor dispute,

ORDER DENYING MOTION FOR
PRELIMINARY INJUNCTIVE RELIEF           -6-

nevertheless found that an injunction was warranted. The fire-hire issue was described as "the fruit of the fundamental, unresolved controversy with respect to third pilots," and the district court was directed to maintain the status quo pending a final resolution of the underlying issue. 551 F.2d at 1148.

In this case, the Union argues that Horizon's unilateral bonus program relates "directly and inextricably to a longstanding subject the parties had been negotiating: incentives to recruit new pilots." Dkt. # 12 at 9. The fact that a permissive subject of bargaining is related to a mandatory subject of bargaining cannot be enough to convert a minor dispute into a major dispute, however. Unlike the situation in O'Donnell, the pre-training bonus dispute did not arise out of a dispute regarding First Officer compensation. Rather, the need to adjust the pay scale for existing pilots arose because Horizon wanted to implement a recruitment strategy for new pilots. The major dispute therefore arose from the minor dispute, and there is no reason to believe that resolving the major dispute will resolve Horizon's pilot recruitment issues. This minor dispute can and should be resolved expeditiously through binding arbitration: it is not so intimately tied to the mechanism through which the parties ensure that incumbent pilots are remunerated adequately "that the very nexus converts the entire context into a major dispute." 551. F.2d at 1147.

Just as importantly, the Court is not convinced that Horizon's interpretation of the contractual provisions works a sufficient change in "the rates of pay, rules, or working conditions of its employees, as embodied in agreements" to justify an injunction. 45 U.S.C. § 152 (Seventh). In O'Donnell, pilots were being fired and rehired. In Illinois Central, engineers were being forced to give up control of the locomotive to an apprentice and threatened with discharge if they left the train. In S. Ry. Co. v. Bhd. of Locomotive Firemen and Enginemen, 337 F.2d 127 (D.C. Cir. 1964), cited by the Ninth Circuit on O'Donnell as "[a] case rather closely in point, involving both major and minor disputes," firemen were being excluded or

ORDER DENYING MOTION FOR
PRELIMINARY INJUNCTIVE RELIEF            -7-

replaced on train crews. Thus, in all of these cases, the employer's proffered contract interpretation worked or threatened to work an obvious and substantial change in working conditions. In those circumstances, the D.C. Circuit reasoned:

> We . . . reject the contention . . . that, because there is no specific statutory provision which expressly forbids either party to alter its interpretation of the contract, the District Court may not enjoin the active steps being taken by the carrier to place that change in interpretation in effect, when the active steps so taken do result in a change in working conditions, contrary to the prohibition of Section 6.

S. Ry. Co., 337 F.2d at 133. In this case, the Union argues that offering bonuses or tuition reimbursement to new recruits will "diminish incumbent pilots' scheduling flexibility and impair their quality of life." Dkt. # 29 at 11. The Union does not explain how even a "dramatic impact" on a pilot's "quality of life" constitutes a change in pay, rules, or working conditions. Id. As for the acknowledged diminution in scheduling flexibility, the change is not of the same type or character as those at issue in the cases on which the Union relies. Given both the nature of the alleged workplace change and the fact that the recruiting program is not inextricably intertwined with the First Officer pay issue, the Court finds that the dispute resolution devices Congress adopted and encouraged in 1934 can and should be utilized to expeditiously resolve this "minor" dispute without resort to the injunctive relief normally reserved for "major" disputes.

      The Court, having analyzed this case under the governing legal principles, finds that the dispute regarding whether Horizon has the contractual authority to provide pre-training bonuses and/or tuition reimbursement is "minor." It is therefore subject to conference and compulsory, binding arbitration. The case law cited by the Union does not justify an injunction. There being no "general statutory obligation on the part of an employer to maintain the status quo" pending the arbitral decision (Conrail, 491 U.S. at 304), the Union is not entitled to the preliminary injunctive relief under the status quo provision of Section 6.

ORDER DENYING MOTION FOR
PRELIMINARY INJUNCTIVE RELIEF        -8-

## B. BAD FAITH BARGAINING

The Union has not shown that it is likely to succeed on the merits of its bad-faith bargaining claim. Horizon believes that it has the right to implement recruitment programs aimed at new hires, even as it acknowledges its obligation to bargain regarding related mandatory subjects such as First Officer pay. The fact that the employer disclosed this belief during negotiations is not, by itself, evidence of bad faith.

## C. INTERFERENCE CLAIM

The Union argues that, by negotiating directly with pilot candidates, Horizon robbed the Union of its statutory right to negotiate collectively on behalf of all pilots it represents. 45 U.S.C. § 152 (Fourth) provides:

> Employees shall have the right to organize and bargain collectively through representatives of their own choosing . . . . No carrier, its officers or agents, shall deny or in any way question the right of its employees to join, organize, or assist in organizing the labor organization of their choice, and it shall be unlawful for any carrier to interfere in any way with the organization of its employees . . . or to influence or coerce employees in an effort to induce them to join or remain or not to join or remain members of any labor organization . . . .

The statute addresses "primarily the precertification rights and freedoms of unorganized employees." Trans World Airlines, Inc. v. Indep. Fed'n of Flight Attendants, 489 U.S. 426, 440 (1989). In some circumstances, however, a post-certification cause of action under § 152 (Fourth) will be inferred where the RLA dispute resolution process is insufficient and "but for the general jurisdiction of the federal courts there would be no remedy to enforce the statutory commands which Congress had written into the Railway Labor Act." Id. at 441 (quoting Switchmen's v. Nat'l Mediation Bd., 320 U.S. 297, 300 (1943)). A statutory claim that does not depend on the interpretation of the CBA is not a minor dispute subject to non-judicial resolution processes. Fennessy v. Sw. Airlines, 91 F.3d 1359, 1365 (9th Cir. 1996).

Although the Union may have a cause of action under § 152 (Fourth), it has not shown

ORDER DENYING MOTION FOR
PRELIMINARY INJUNCTIVE RELIEF            -9-

that it is likely to establish unlawful interference. As discussed above, the Union has not shown that pilots who have neither begun training nor performed work for Horizon are employees under either the RLA or the governing CBA. The interference provision, by its terms, applies to employees, and the Union offers no authority or argument that would support an extension to individuals who hope or intend to become employees.

For all of the foregoing reasons, the Union's motion for preliminary injunctive relief (Dkt. # 12) is DENIED.

Dated this 21st day of March, 2017.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER DENYING MOTION FOR
PRELIMINARY INJUNCTIVE RELIEF          -10-